UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

REGINALD MCBRIDE,

*Plaintiff,*

v.

THE CITY OF ROCHESTER, NEW YORK, and
THE COUNTY OF MONROE, NEW YORK,

*Defendants.*

Case No.: _____

# COMPLAINT AND JURY DEMAND

Plaintiff, REGINALD MCBRIDE, by and through his attorneys, SANTIAGO BURGER LLP, asserts as follows in support of his COMPLAINT against Defendants CITY OF ROCHESTER and COUNTY OF MONROE:

## RELIEF SOUGHT

1.    Plaintiff, REGINALD MCBRIDE, sues Defendant CITY OF ROCHESTER Police Department for falsely arresting Plaintiff outside his then-residence at 89 Hobart Street, Rochester, New York ("House"), on a charge of felony possession of a Smith & Wesson .38 Special revolver firearm, without probable cause or a warrant and despite conclusive police body camera audio-video footage proving his actual innocence ("Arrest").

2.    Defendants CITY OF ROCHESTER Police Department and COUNTY OF MONROE Sheriff's and District Attorney's Offices caused Plaintiff to be falsely

1

imprisoned, indicted, and maliciously prosecuted in connection with the Arrest between the approximate dates of April 17, 2017 and August 17, 2017.

3.      Plaintiff seeks compensatory damages and attorney's fees from Defendants to vindicate Defendants' violation of his civil rights.  *See generally* U.S. CONST. amends. IV, V & XIV; 42 USC §§ 1983 & 1988; NY CONST. art. 1, §§ 6 & 12; N.Y. CIV. RIGHTS. L. § 8.

## JURISDICTION AND VENUE

4.      The original subject matter jurisdiction of this Court is invoked under 28 U.S.C. sections 1331 and 1367 because this case concerns constitutional questions, violations of constitutional rights by the government and/or its representatives, acting under color of any statute, ordinance, regulation, custom, or usage, and other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      The Western District of New York is the proper venue for this case under 28 U.S.C. section 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred therein.

## PARTIES

6.      Plaintiff, Reginald McBride, is a citizen of the State of New York, and

of the United States, and a domiciliary of the City of Rochester, and the County of Monroe, residing at 836 Clifford Avenue, Rochester, New York 14621.

7.    Defendant, City of Rochester, New York, is a municipal corporation located within the Western District of New York, with its principal offices located at 30 Church Street, Rochester, New York 14614.

8.    Defendant, County of Monroe, New York, is a municipal corporation located within the Western District of New York, with its principal offices located at 39 West Main Street, Rochester, New York 14614.

## FACTUAL BACKGROUND

9.    At shortly after 8:00 P.M. on April 17, 2017, Rochester Police Department (RPD) officers responded to a "spotshotter activation" and citizen reports of gunshots fired in the vicinity of Hobart Street and Chili Avenue, in the City of Rochester, County of Monroe, State of New York.

10.    RPD also broadcasted over its west side primary channel "that a group of males related to the shots fired incident were seen running behind 89 Hobart St."

11.    RPD also broadcast a report "that some of the males ran inside [89 Hobart Street]."

12.    RPD officers arrested two men inside the House and charged them with possessing two guns: a .38 revolver and a semiautomatic pistol.

13.    According to police reports Rochester Police Officers also detained other men named Hassann Ross and Ronald Kelly in connection with this incident.

14. Police captured Ross and Kelly inside of 89 Hobart Street on a rear staircase and the police reported that these were the men in possession of the only two firearms recovered. One man discarded a revolver on the stairs. Another man had a second gun "fall out from underneath him on the landing."

15. Ross later admitted to discharging the revolver and possessing it when he was apprehended by police inside the House.

16. Rochester Police Officer Jeffrey Schall identified and arrested a suspect, whom he mistakenly identified as Plaintiff Reginald McBride, inside the House on the rear stairs sitting next to the .38 revolver.

17. When Officer Schall helped the suspect, whom he erroneously believed to be McBride, to stand up on the rear stairs in the House, Officer Schall saw that the suspect was sitting on the semi-automatic handgun. Officer Schall described this suspect with the semiautomatic as having "dreads in his hair".

18. Plaintiff did not have dreadlocks in his hair (but did wear a beard and mustache) and was in the custody of Officer Marrero outside the House.

19. Plaintiff Reginal McBride, then 19 years of age, resided with his mother and siblings at 89 Hobart Street, Rochester, New York.

20. Rochester Police Officers first encountered and detained Plaintiff outside of the House, his residence, and handcuffed him there on the ground, against his will and without his consent.

21. Rochester Police Officers transported Plaintiff to the Public Safety Building in handcuffs, against his will and without his consent.

22.    Rochester Police Officers interviewed Plaintiff at the Public Safety Building where Plaintiff denied possessing the gun and offered to submit to a gunshot residue test.

23.    Rochester Police Officers misidentified Plaintiff as a perpetrator despite conclusive evidence to the contrary.

24.    Audio and video footage from police body cameras confirm that Plaintiff was not one of the men who police witnessed in unlawful possession of the two firearms on April 17, 2017:

     a.    At 8:10:08 p.m., Rochester Police Officer Jose Marrero detained and handcuffed Plaintiff outside of 89 Hobart Street and forced Plaintiff to lay on the ground on his stomach thereafter until he was transported to the police station.

     b.    Then, while Plaintiff was on the ground *outside* the House and in the custody of Rochester Police Officer Jose Marrero, other Rochester Police Officers apprehended other suspects with two guns (a .38 revolver and a semi-automatic handgun) *inside* the House.  At least one of these men had dreadlocks in his hair.

     c.    Plaintiff could not have possessed either of the guns because he was in police custody *outside* the House and the police captured the suspects and recovered the guns from such suspects' respective persons and/or their immediate vicinities

*inside* the House.

d.     There were two guns recovered.

e.     The person with the first gun was named Hassan Ross.  He confessed to this and was convicted of this.

f.     Hassan Ross, wearing a red coat, was captured in the House by Officer Samuel Giancursio with a gun on the stairs.

g.     Hassan Ross was then taken out of the House and handcuffed and placed on the ground outside near Plaintiff.

h.     Then police brought another man out of the House.  His identity is unknown but police identify him on camera as having had a gun. "He had a gun; hold onto him." Jose Marrero Body Camera timestamped 04.17.2017, 20:12:10. This was the only other gun. This man had dreadlocks.

i.     Plaintiff did not have dreadlocks but did have a beard and moustache.

j.     Plaintiff was on the ground outside the House in handcuffs when the man with the dreadlocks was removed from inside the House and identified as a gunman in the backyard.

k.     During Plaintiff's interrogation, the RPD officers conducting the interrogation repeatedly told Plaintiff that they had Plaintiff on video sitting on the gun and that the gun would have his fingerprints on it.  Plaintiff repeatedly refuted this

6

claim.

l.     During his interrogation, Police told Plaintiff that it was more "believable" that he had a gun belonging to someone else than that he had no gun at all.

m.     A police officer conducting the interrogation told Plaintiff that he would be charged with illegally possessing a gun and jailed before reviewing the video footage to confirm Plaintiff's account of innocence but he then promised to check the video and compare it with Plaintiff's account.

25.     The police officers failed to review the video footage showing Plaintiff's innocence and charged him anyway.

26.     The police officers conducting the interrogation failed to conduct a fingerprint analysis or comparison on the gun which would have corroborated Plaintiff's account of the evening's events.

27.     On or about May 2, 2017, Defendants withheld relevant and exculpatory evidence from the Monroe County Grand Jury, resulting in a two-count indictment against Plaintiff (Indictment).

28.     While Plaintiff was in custody in connection with the Arrest and the Indictment, he was seriously and permanently injured and subjected to fear, pain, and suffering, mental anguish and humiliation.

CHARGES AGAINST DEFENDANTS

## COUNT ONE

**Deprivation of Federal Constitutional Civil Rights to be Free from Unreasonable and Warrantless Searches and Seizures, Unlawful Imprisonment, Malicious Prosecution, and Deprivation of Procedural and Substantive Due Process under the Fourth and Fourteenth Amendments**
**[42 USC § 1983]**

29.     Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 28 and all other paragraphs of the Complaint as though fully set forth herein.

30.     Defendants arrested, commenced, and continued a criminal prosecution against Plaintiff for criminal possession of a weapon.

31.     Defendants did not have a warrant for Plaintiff's Arrest.

32.     Defendants deprived Plaintiff of his liberty against his will, handcuffing him and confining him for approximately four months.

33.     Defendants deprived Plaintiff of due process of law by arresting and confining him and prosecuting him without revealing the audiovisual evidence of his innocence to the courts.

34.     Defendants violated Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

35.     Plaintiff was innocent of the charged felony offense.

36.     At all relevant times, Defendants had conclusive evidence in the form of police body camera video footage proving Plaintiff's innocence.

37.     The Arrest and concomitant imprisonment and criminal prosecution were without probable cause and not otherwise privileged.

38.     Defendants acted with legal malice in falsely arresting, imprisoning, and prosecuting Plaintiff despite the conclusive evidence of Plaintiff's actual innocence in Defendants' possession.

39.     Defendants withheld and/or suppressed the evidence of Plaintiff's innocence by not timely presenting it to the courts and/or the grand jury.

40.     Plaintiff requested that Defendants produce all exculpatory evidence.

41.     The felony prosecution terminated in Plaintiff's favor when it was dismissed with prejudice by the New York State Supreme Court (MORAN, *J.*), upon the Monroe County District Attorney's application.

42.     The District Attorney's Office confirmed in open court that Plaintiff was misidentified and actually innocent of the indicted offenses stemming from the Arrest.

43.     Defendants acted under color statute, ordinance, regulation, custom, and/or usage of New York State and subjected Plaintiff or caused Plaintiff to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws.

9

44.     At all relevant times, Plaintiff was aware of his Arrest and unlawful imprisonment by Defendants on the felony charge and objected thereto.

45.     While Plaintiff was imprisoned by Defendants he suffered physical injuries and mental anguish proximately caused by such imprisonment.

## COUNT TWO

**Deprivation of Federal Constitutional Civil Rights to Liberty and Procedural and Substantive Due Process of Law by Withholding Material Exculpatory Evidence, and Failing to Conduct a Constitutionally Adequate Investigation.**
**[42 USC § 1983]**

46.     Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 45 and all other paragraphs of the Complaint as though fully set forth herein.

47.     Defendants had the evidence of Plaintiff's innocence in their actual or constructive possession at all relevant times.

48.     Defendants failed to timely disclose the evidence of Plaintiff's innocence to the Plaintiff, the grand jury or the courts, resulting in Plaintiff being incarcerated for four months.

## COUNT THREE

**Failure to Train and Supervise.**
**[42 USC § 1983]**

49.     Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 48 and all other paragraphs of the Complaint as though fully set forth herein.

50.     Defendants failed to adequately supervise, train, and discipline their

employees with respect to the investigation and prosecution of Plaintiff's case.

51.   Defendants failed to adequately supervise, train, and discipline their employees with respect to the seizure and detention of Plaintiff.

52.   As a direct consequence of Defendants' respective grossly negligent failure to train, discipline and supervise their employees, Plaintiff was unlawfully arrested, imprisoned, indicted, and prosecuted for a crime he did not commit.

## COUNT FOUR

### *Monell* Liability
### [42 USC § 1983]

53.   Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 52 and all other paragraphs of the Complaint as though fully set forth herein.

54.   Defendants, with deliberate indifference, maintained an official policy, custom, practice, and/or usage of failing to fully and adequately investigate cases and review evidence before commencing a prosecution or seeking an indictment from a grand jury or announcing readiness for trial in court.

55.   Defendants knew that their deliberate policy making indifference was likely to result in wrongful arrests, prosecutions, and imprisonment.

56.   As a direct and proximate result of Defendants' constitutionally inadequate investigative, prosecutorial, and detention practices, Plaintiff was deprived of his Fourth and Fourteenth Amendment rights to be free from

unreasonable searches and seizures, false arrest and imprisonment, malicious prosecution, and deprivation of liberty without procedural or substantive due process of law.

57.    Defendants' conduct directly and proximately caused Plaintiff's physical and mental injuries related to his arrest, prosecution, and/or incarceration.

## COUNT FIVE

**Deprivation of New York State Constitutional and Statutory Civil Rights to be Free from Unreasonable and Warrantless Searches and Seizures, Unlawful Imprisonment, Malicious Prosecution, and Deprivation of Procedural and Substantive Due Process**

58.    Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 57 and all other paragraphs of the Complaint as though fully set forth herein.

59.    Defendants arrested, commenced, and continued a criminal prosecution against Plaintiff for criminal possession of a weapon.

60.    Defendants did not have a warrant for Plaintiff's Arrest.

61.    Defendants deprived Plaintiff of his liberty against his will, handcuffing him and confining him for approximately four months.

62.    Defendants deprived Plaintiff of due process of law by arresting and confining him and prosecuting him without revealing the audiovisual evidence of his innocence to the courts.

63.    Defendants violated Plaintiff's rights under article 1, sections 6 and 12

of the New York State Constitution and section 8 of the New York Civil Rights Law.

64.    Plaintiff was innocent of the felony offense of which Defendants accused him and for which Defendants prosecuted him.

65.    At all relevant times, Defendants had conclusive evidence in the form of police body camera video footage proving Plaintiff's innocence.

66.    The Arrest and concomitant imprisonment and criminal prosecution were without probable cause and not otherwise privileged.

67.    Defendants acted with legal malice in falsely arresting, imprisoning, and prosecuting Plaintiff despite the conclusive evidence of Plaintiff's actual innocence in Defendants' possession.

68.    Defendants withheld and/or suppressed the evidence of Plaintiff's innocence by not timely presenting it to the courts and/or the grand jury.

69.    The felony prosecution terminated in Plaintiff's favor when it was dismissed with prejudice by the New York State Supreme Court (Moran, J.), upon the Monroe County District Attorney's application.

70.    Plaintiff timely served a verified notice of claim upon Defendant City of Rochester under New York General Municipal Law section 50-e but it has failed or refused to adjust the claim.

71.    At all relevant times, Plaintiff was aware of his Arrest and unlawful

imprisonment by Defendants on the felony charge and objected thereto.

72.     While Plaintiff was imprisoned by Defendants he suffered physical injuries and mental anguish proximately caused by such imprisonment.

73.     Defendants' actions violated article 1, section 12 of the New York State Constitution and section 8 of the New York State Civil Rights Law.

## COUNT SIX

### New York State Law Claim for Negligent Infliction of Emotional Distress

74.     Plaintiff adopts and reasserts the information contained in Paragraphs 1 – 73 and all other paragraphs of the Complaint as though fully set forth herein.

75.      Defendants had a duty to Plaintiff to investigate his case adequately and secure his release form custody and the termination of his prosecution where evidence in Defendants' possession exonerated Plaintiff.

76.     Defendants breached their duty directly and proximately caused Plaintiff's false arrest, imprisonment, and malicious prosecution, and the injuries Plaintiff suffered as a result thereof.

77.     Defendants did not have any excuse or license for their tortious conduct.

## COUNT SEVEN

### New York State Law Claim for Respondeat Superior

78.     Plaintiff adopts and reasserts the information contained in Paragraphs

1 – 77 and all other paragraphs of the Complaint as though fully set forth herein.

79.     At all relevant times, Defendants' employees acted as agents of and in the scope of their employment with Defendants.

80.     The conduct of Defendant's employees, by which Plaintiff suffered the injuries and damages described herein, all occurred while Defendants' employees were on duty, carrying out their routine investigative functions, and engaging in such conduct as would have been reasonably expected by their respective employers.

81.     Defendants are liable for its agents' state law torts of false arrest, malicious prosecution, false imprisonment, and negligent infliction of emotional distress under the legal doctrine of respondeat superior.

## JURY TRIAL DEMAND

82.     Plaintiff demands a trial by jury.   *See* U.S. CONST. amend. VII; F.R.C.P. 38.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests JUDGMENT against Defendants, jointly and severally, as follows:

A.     Awarding monetary damages on each of the above COUNTS and causes of action in an amount to be determined at trial;

B.      Awarding pre- and post-judgment interest;

C.      Directing Defendants to pay Plaintiff all reasonable attorney's fees and costs under 42 U.S.C. section 1988; and

D.      Awarding all other and further relief that this Court deems just and proper.

Dated:       May 16, 2018
             Pittsford, New York

                        Respectfully submitted,

                        /s/Michael A. Burger
                        Michael A. Burger
                        SANTIAGO BURGER LLP
                        *Attorneys for Plaintiff Reginald McBride*
                        1250 Pittsford-Victor Road
                        Building 100, Suite 190
                        Pittsford, NY 14534
                        Phone: 585-563-2400
                        Fax: 585-563-7526
                        mike@litgrp.com